Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BOSCO IX OVERSEAS, LLC, BY FRANKLIN CREDIT MANAGEMENT CORPORATION AS SERVICER<br><br>**Parte apelada**<br><br>v.<br><br>FERNANDO JESÚS PAONESSA LÓPEZ, ET AL.<br><br>**Parte apelante** | **TA2025AP00593** | ***APELACIÓN***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Caso Núm.:<br>**N3CI201100155**<br><br><br>Sobre:<br><br>**EJECUCIÓN DE HIPOTECA** |

Panel integrado por su presidenta la Juez Domínguez Irizarry, Juez Ronda del Toro y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece ante nos Fernando Paonessa López, en adelante, Paonessa López o apelante, solicitando que revisemos la *"Sentencia"* dictada el 21 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo, en adelante, TPI-Fajardo. En la misma, el Foro Apelado declaró *"Con Lugar"* una solicitud de sentencia sumaria.

Por los fundamentos que expondremos a continuación, *confirmamos* el dictamen apelado.

### I.

El año pasado atendimos una petición de *certiorari* sobre el caso de epígrafe. El siguiente es un recuento, según lo recogimos en la pasada sentencia, de los hechos que dan génesis a la controversia que hoy nos ocupa:[1]

---

[1] KLCE202401219.

En el año 1988, [Annette Braffette Mullinelli, en adelante, Braffette Mullinelli] contrajo nupcias con Paonessa López. El 10 de junio de 2002, Braffette Mullinelli le otorgó un *"Poder General"* a su entonces esposo, Paonessa López, para que este actuara como "Apoderado General" en los asuntos de la Sociedad de Bienes Gananciales compuesta por ambos.

Alega [Braffette Mullinelli] que utilizando el *"Poder General"* otorgado a este, Paonessa López suscribió unilateralmente un pagaré y otorgó una escritura de hipoteca en garantía de pagaré, a favor de Scotiabank de Puerto Rico, en adelante, Scotiabank, el día 28 de septiembre de 2007. Mediante el pagaré otorgado, se le desembolsó al matrimonio Paonessa-Braffette la suma de $1,350,000.00.

Así las cosas, el 9 de marzo de 2011, Scotiabank presentó una *"Demanda"* en cobro de dinero y ejecución de hipoteca contra el matrimonio Paonessa-Braffette. Alegó que estos no habían cumplido con los acuerdos estipulados en el pagaré hipotecario, y tenían un balance de $1,312,077.46. El 7 de septiembre de 2011, los demandantes presentaron su *"Contestación a Demanda"*, en la que, entre otras cosas, se reservaron el derecho a levantar las defensas que surgieran del descubrimiento de prueba.

Eventualmente Bosco IX Overseas, LLC, en adelante, Bosco o apelada, adquirió los derechos del pagaré hipotecario en cuestión. Ahora bien, relevante a la controversia que nos compete, el 29 de octubre de 2014, Scotiabank presentó una *"Moción Informativa Solicitando se dicte Sentencia Sumaria y Solicitud de Desistimiento Parcial"*.[2] En su petición, sostuvo que los siguientes eran hechos no controvertidos:

1. Consta en los autos del caso de epígrafe que por valor recibido la parte codemandada FERNANDO PAONESSA LÓPEZ t/c/c FERNANDO JESÚS PAONESSA LÓPEZ y su esposa ANNETTE BRAFFETTE MULLINELLI t/c/c ANNETTE BRAFETT MOLINELY t/c/c ANNETTE BRAFFETT MULINELLI t/c/c ANNETTE BRAFETT MULINELLI y la Sociedad Legal de Bienes Gananciales compuesta por ambos, suscribió un Pagaré Hipotecario con vencimiento a la orden (que según dispone el

---

[2] Apéndice del recurso, Anejo 6.

pagaré es el 1 de octubre de 2037) por la suma de $1,350,000.00 con intereses a razón de 7.125% anual y demás créditos accesorios.[3]

2. La parte codemandada FERNANDO PAONESSA LÓPEZ t/c/c FERNANDO JESÚS PAONESSA LÓPEZ y su esposa ANNETTE BRAFFETTE MULLINELLI t/c/c ANNETTE BRAFETT MOLINELY t/c/c ANNETTE BRAFFETT MULINELLI t/c/c ANNETTE BRAFETT MULINELLI y la Sociedad Legal de Bienes Gananciales compuesta por ambos, es deudora principal de la obligación, según se desprende del Pagaré al cual se hace referencia anteriormente.[4]

3. La garantía hipotecaria se constituyó mediante la Escritura número 905, otorgada en San Juan, Puerto Rico, el 28 de septiembre de 2007, ante el notario Georgette M. Rodríguez Figueroa constituyendo una hipoteca sobre el inmueble que se describe continuación:

> URBANA: Solar marcado con el número 52, de la Urbanización Las Vistas Río Mar, localizada en el Barrio Mameyes del Municipio de Río Grande, Puerto Rico, con una cabida superficial de 1810.0067 metros cuadrados. Colinda por el NORTE, en una distancia de 53.0495 metros, con el solar número 51; por el SUR, en una distancia de 57.0831 metros, con el solar #53; por el ESTE, en una distancia de 26.1358 metros (según escritura constitutiva de hipoteca 26.58 metros), con cluster #3, y por el OESTE, en una distancia de 39.6098 metros con la calle número 1.
>
> Finca Número 28,359, Inscrita al folio 100 del tomo 529 (ágora) de Río Grande. Registro de la Propiedad de Carolina, Sección III.[5]

4. De conformidad con el Pagaré otorgado, se le desembolsó a la parte codemandada FERNANDO PAONESSA LÓPEZ t/c/c FERNANDO JESÚS PAONESSA LÓPEZ y su esposa ANNETTE BRAFFETTE MULLINELLI t/c/c ANNETTE BRAFETT MOLINELY t/c/c ANNETTE BRAFFETT MULINELLI t/c/c ANNETTE BRAFETT MULINELLI y la Sociedad Legal de Bienes Gananciales compuesta por ambos, la suma de 1,350,000.00 de cuya obligación queda un balance de $1,312,077.46 por concepto de principal, más los intereses acumulados desde el 1

---

[3] Apéndice del recurso, págs. 17-21.
[4] *Íd.*
[5] *Íd.*, pág. 22.

de junio de 2010, más recargos por mora pactados, más gastos, costas y honorarios de abogado.[6]

5. La parte codemandada FERNANDO PAONESSA LÓPEZ t/c/c FERNANDO JESÚS PAONESSA LÓPEZ y su esposa ANNETTE BRAFFETTE MULLINELLI t/c/c ANNETTE BRAFETT MOLINELY t/c/c ANNETTE BRAFFETT MULINELLI t/c/c ANNETTE BRAFETT MULINELLI y la Sociedad Legal de Bienes Gananciales compuesta por ambos, no ha cumplido con los acuerdos estipulados en el Pagaré Hipotecario al dejar de realizar los pagos en las fechas señaladas, los cuales no han sido realizados en su fecha de vencimiento, dando derecho a SCOTIABANK a declarar vencido y al cobro el préstamo de referencia.[7]

6. SCOTIABANK es tenedor y poseedor de buena fe del Pagaré Hipotecario descrito (véase pagaré endosado a favor de Sctotiabank- exhibit I) en esta Demanda y sus gestiones tendentes al cobro de las sumas adeudadas y señaladas en los párrafos anteriores han sido agotadas.[8]

7. Como ya hemos señalado, la parte codemandada FERNANDO PAONESSA LÓPEZ t/c/c FERNANDO JESÚS PAONESSA LÓPEZ Y su esposa ANNETTE BRAFFETTE MULLINELLI t/c/c ANNETTE BRAFETT MOLINELY t/c/c ANNETTE BRAFFETT MULINELLI t/c/c ANNETTE BRAFETT MULINELLI y la Sociedad Legal de Bienes Gananciales compuesta por ambos ha incurrido en el incumplimiento de su obligación al haber dejado de pagar las mensualidades vencidas, más los intereses. Por esta razón, SCOTIABANK ha declarado vencida la totalidad de la deuda, ascendente a la suma de $1,312,077.46 por concepto de principal, más los intereses acumulados desde el 1 de junio de 2010; más los cargos por mora; más una cantidad equivalente al 10.00% del principal del pagaré para el pago de las costas, gastos y honorarios de abogados (dicha suma está dispuesta en el párrafo 6 (E) de la página 4 del pagaré hipotecario); más cualesquiera otros adelantos que se hagan en virtud del pagaré y la escritura de hipoteca. La garantía hipotecaria, consta inscrita al folio 101 del tomo 529 de Río Grande, como inscripción segunda, en el Registro de la Propiedad de Carolina, Sección III, según surge del Estudio de título juramentado que anejamos.[9]

8. Anejamos historial de pago correspondiente al préstamo en cuestión, que reflejan las cantidades adeudadas a la fecha,

---

[6] Apéndice del recurso, pág. 63.
[7] *Íd.*, pág. 66.
[8] *Íd.*
[9] *Íd.*, págs. 66, 68-70.

balances de cancelación y reinstalación, computados al 31 de julio de 2013, cuya cantidad continuará en aumento hasta el saldo total.[10]

9. Las sumas anteriores de dinero son líquidas, exigibles y están vencidas.[11]

Para sustentar estas determinaciones de hecho, Scotiabank anejó los siguientes documentos:

1. Pagaré objeto de la controversia, otorgado el 28 de septiembre de 2007.[12]

2. Hipoteca a favor de R&G Premier Bank of Puerto Rico del 28 de septiembre de 2007.[13]

3. "Certificación y Declaración Jurada" de Alba Rivera Cortés, Ejecutiva de la División Legal de Scotiabank del 24 de octubre de 2014.[14]

4. Carta del 3 de agosto de 2010 de R&G Mortgage, dirigida a Paonessa López.[15]

5. Estudio de Título sobre la propiedad hipotecada, y la Declaración Jurada de Nilsa Y. Pérez Juarbe, oficial autorizado de LJN Title Search Company Inc., quien preparó el estudio el 23 de julio de 2013.[16]'

6. Historial de transacciones de la propiedad hipotecada por Paonessa López y Braffette Mullinelli.[17]

7. Balance de cancelación del 30 de julio de 2013.[18]

Luego de varios asuntos procesales, incluida una paralización ante la Corte de Quiebra, el 17 de julio de 2025, Ponessa López, presentó su *"Moción en Oposición a Sentencia Sumaria"*.[19] En su escrito, el apelante no estableció determinaciones de hechos en controversia, ni atendió las determinaciones de hechos incontrovertidos de la solicitud de sentencia sumaria. Este se limitó a esbozar las razones por las que entiende que la petición de la apelada no cumplió con la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.5 y por qué no

---

[10] Apéndice del recurso, págs. 72-75.
[11] *Íd.*, págs. 63-64.
[12] *Íd.*, pág. 17.
[13] *Íd.*, pág. 22.
[14] *Íd.*, pág. 63.
[15] *Íd.*, pág. 66.
[16] *Íd.*, págs. 68-70.
[17] *Íd.*, págs. 72-75.
[18] *Íd.*, págs. 76-77.
[19] *Id.*, Anejo 6.

procede en derecho la reclamación de cobro de dinero y ejecución de hipoteca. Además, sostuvo que era necesaria una vista evidenciaria.

El 14 de agosto de 2025, Bosco radicó una moción solicitándole al TPI-Fajardo que diera el asunto de la solicitud de sentencia sumaria por sometido, sin la oposición de Braffette Mullinelli.[20]

Así las cosas, el 25 de agosto de 2025, el Foro Apelado notificó una *"Sentencia"* en la que declaró *"Con Lugar"* la demanda de la apelada.[21] Mediante su dictamen, el Foro Apelado declaró que el balance de la hipoteca adeuda por la apelante, en concepto del principal, intereses y honorarios de abogado en dos millones, ochocientos cincuenta y seis mil, ochocientos noventa y un dólar con cinco centavos ($2,856,891.05). Además, ordenó la venta en pública subasta del bien inmueble hipotecado.

Inconforme, el 9 de septiembre de 2025, Paonessa López radicó una solicitud de reconsideración ante el TPI-Fajardo.[22] El 29 de septiembre de 2025, la apelada se opuso a la misma.[23] Finalmente, el 24 de octubre de 2025, el Foro Primario declaró *"No Ha Lugar"* la solicitud de reconsideración.[24]

Por estos hechos, el 24 de noviembre de 2025, Paonessa López recurrió ante esta Curia mediante un recurso apelativo, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** La sentencia sumaria se emitió aun cuando los documentos presentados por la parte apelada no estaban certificados ni juramentados, en incumplimiento con la Regla 36.5 de Procedimiento Civil, lo que impedía su consideración como evidencia admisible. Asimismo, la parte apelada acompañó declaraciones juradas que no acreditan conocimiento personal de la

---

[20] Apéndice del recurso, Anejo 21.
[21] *Íd.*, Anejo 22.
[22] *Íd.*, Anejo 24.
[23] *Íd.*, Anejo 26.
[24] *Íd.*, Anejo 27.

declarante ni explican en virtud de qué función conocía de la alegada deuda, circunstancia que genera dudas sustanciales sobre la exactitud de las cantidades reclamadas.

**SEGUNDO ERROR:** En segundo plano, cabe señalar que tampoco se celebró vista evidenciaria que permitiera demostrar la tenencia y posesión física del pagaré, elemento indispensable para sostener la legitimación activa de la parte apelada. En conjunto, estas deficiencias privan a la determinación apelada del fundamento probatorio requerido.

El 5 de diciembre de 2025 emitimos una *"Resolución"* concediéndole a la parte apelada hasta el 29 de diciembre de 2025 para presentar su alegato conforme a los dispuesto en la Regla 22 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 38, 215 DPR ___ (2025).

En cumplimiento de orden, el 12 de diciembre de 2025, Bosco presentó su alegato en oposición. Quedando perfeccionado el recurso de marras, estamos en posición de resolver, y a continuación, así lo hacemos.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, *apelación,* y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a

las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La apelación no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la

actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, supra, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Coop. Seguros Múltiples y otros v. ELA y otros,* 2025 TSPR 78, 216 DPR ___ (2025); *Consejo Tit. v. Rocca Div. Corp. et als,* 2025 TPSR 6, 215 DPR ___ (2025); *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2023); *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales ***no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita.*** *BPPR v. Zorrilla Posada y otro,* 214 DPR 329, 337 (2024); *Cruz, López v. Casa Bella y otros*, supra, pág. 993; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra. Además, la Regla 36 de Procedimiento Civil, supra, dispone que las solicitudes de esta naturaleza serán sustentadas con

documentos que evidencien la falta de controversia en los hechos o en sus declaraciones juradas.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 979; *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, ***la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción.*** *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank*

*v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *BPPR v. Cable Media,* supra; *BPPR v. Zorrilla Posada y otro,* supra; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, ***si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho.*** *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo

anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole,* 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole,* supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá, cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* supra, pág. 993; *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que

involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* 211 DPR 455, 471-472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el Foro Primario. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas,* supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Negrón Castro y otros v. Soler Bernardini y otros,* 2025 TSPR 96, 216 DPR ___ (2025), *Batista Valentín v. Sucn. Batista Valentín y otros,* 2025 TSPR 93, 216 DPR ___ (2025). *Coop. Seguros Múltiples y otros v. ELA y otros,* supra; *Consejo Tit. v. Rocca Div. Corp. et als,* supra; *Soto y otros v. Sky Caterers,* supra; *BPPR v. Cable Media, BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros,* supra, pág.

994. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar de *novo* si el foro primario aplicó correctamente el derecho.

**III.**

La parte apelante recurre ante esta Curia impugnando el dictamen del Foro Primario en el que se declaró *"Con Lugar"* la petición de sentencia sumaria presentada por la parte apelada. En sus señalamientos de error, los cuales discutiremos en conjunto, Paonessa López aduce, en apretada síntesis, que no procedía que se resolviera sumariamente la controversia, por no haber cumplido la petición para ello con las disposiciones estatutarias correspondientes. Sostuvo, además, que procedía una vista evidenciaria para atender asuntos materiales de hecho. *No le asiste la razón.*

Como vimos, cuando una parte logra establecer que en un pleito no existen hechos en controversias, y la oposición no logra rebatirlos, procede que se dicte sentencia sumaria. La jurisprudencia ha reconocido, en efecto, varias excepciones a esto, entre ellas, los asuntos de credibilidad que sean demasiado importantes como para no dilucidarse en juicio. No vislumbramos en el caso de autos alguna de estas excepciones.

Recordemos, además, que, al cuestionarse ante este Tribunal la corrección de una sentencia sumaria, procede que utilicemos los mismos criterios que el foro *a quo* esgrimió para determinar si esa era la manera correcta en derecho de disponer del caso. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). No obstante, una vez hayamos aplicado los criterios enunciados en la jurisprudencia para determinar si procedía tal dictamen, nuestra

adjudicación queda limitada de dos (2) maneras. En primer lugar, sólo podremos considerar los documentos que tuvo ante sí el foro apelado. *Cruz, López v. Casa Bella y otros*, supra, pág. 994; *Birriel Colón v. Econo y otro*, 213 DPR 80, 91 (2023); *Vera v. Dr. Bravo,* supra, pág. 335. En segundo lugar, nuestra determinación queda limitada a declarar "si existe o no alguna controversia genuina de hechos esenciales o medulares, y si el derecho se aplicó de forma correcta". *Vera v. Dr. Bravo,* supra, pág. 335.

Paonessa López aduce que la petición de sentencia sumaria de la apelada no procede porque los documentos no contaban, cada uno de ellos, con una declaración jurada que los certificara. Justipreciamos que esto es una evaluación equivocada de los requisitos dispuestos en las Reglas de Procedimiento Civil, supra y la jurisprudencia. Nuestro ordenamiento jurídico requiere que el proponente de una sentencia sumaria presente una declaración jurada junto a la misma. Respecto a la documentación para sustentar la moción, solo se requiere que la misma sea evidencia admisible judicialmente.

De los documentos que obran en autos, surge que la moción de sentencia sumaria fue acompañada de una *"Certificación y Declaración Jurada"* por Alba Rivera Cortés, Ejecutiva de la División Legal de Scotiabank.[25] En el documento, la parte apelada certificó el pagaré hipotecario y la cantidad adeudada. Por otro lado, también expresó que la apelada era la tenedora y poseedora de buena fe del pagaré, y que las cantidades reclamadas están vencidas, líquidas y exigibles. Además, certificó la corrección de los documentos anejados.

Concluimos, por lo tanto, que la apelada cumplió con los requisitos necesarios para presentar adecuadamente una solicitud

---

[25] Apéndice del recurso, Anejo 6, pág. 63.

de sentencia sumaria, junto a la prueba documental que la sustentara.

Por otro lado, la parte apelante arguye que de los documentos que acompañan la solicitud de sentencia sumaria, no se desprende que la apelada tenga legitimación activa. Sin embargo, sostenemos que Paonessa López no nos ha colocado en posición para concluir lo contrario. Además, hemos evaluado la oposición de este a la solicitud de sentencia sumaria, y ultimamos que la misma no rebatió la solicitud de la parte apelada satisfactoriamente. En primera instancia, destacamos que, contrario a lo exigido por la Regla 36.3 de Procedimiento Civil, supra, el apelante no rebatió las determinaciones de hecho no controvertidos propuestos en la moción de sentencia sumaria, ni estableció los hechos en controversia. Sin embargo, se limitó a atacar, erróneamente, la validez de la petición. Como expresáramos previamente, una oposición insatisfactoria no obliga al Foro Primario a conceder la sentencia sumaria. Sin embargo, la consecuencia es que la oposición no constituye un obstáculo para conceder la petición de sentencia sumaria, cuando la misma establece a satisfacción del Tribunal que la controversia a dilucidar es una de derecho, por no existir hechos materiales en controversia.

Así, luego de una sosegada evaluación del expediente que nos ocupa, de la solicitud de sentencia sumaria del apelante, y la revisión de *novo* sobre la misma, *lo cual en derecho nos corresponde*, hemos podido constatar que las determinaciones de hecho y derecho contenidas en la solicitud de sentencia sumaria de la apelada se sustentan con los documentos presentados. Por ello, concluimos que el foro *a quo* no se equivocó al declarar la misma *"Con Lugar"*.

**IV.**

Por los fundamentos antes esbozados, *confirmamos el dictamen apelado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones